### UNITED STATES v. OLMSTEAD et al.

(District Court, W. D. Washington, N. D. September 21, 1925.)

No. 9165.

**1. Searches and seizures ⊜⟶7—Constitutional right not waived by submission to search.**

Constitutional right is not waived by submission to search.

**2. Searches and seizures ⊜⟶3—Search not made lawful by what is found.**

Search, unlawful at inception, does not become lawful by what is found.

**3. Constitutional law ⊜⟶79—Finding of probable cause judicial function.**

Finding of probable cause for issuance of search warrant is a judicial function.

**4. Intoxicating liquors ⊜⟶248—Application and affidavit for search warrant held to show probable cause of sale of liquor in dwelling.**

Application and affidavit for search warrant for search of a dwelling under National Prohibition Act, tit. 2, § 25 (Comp. St. Ann. Supp. 1923, § 10138½m), held, by statement of matters seen and overheard, to make the necessary showing of probable cause of sale of liquor.

**5. Criminal law ⊜⟶393(1)—Intoxicating liquors ⊜⟶249—Papers, improperly seized under search warrant not describing them, not admissible against party whose premises were searched.**

Warrant for search because of violation of National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) a misdemeanor, primarily for liquor, not describing any papers, and, no liquor being found, papers and docu-

ment in a defendant's house and office, constituting mere evidence that a crime may have been committed, could not rightfully be seized on any theory, and being seized could not, under Const. Amend. 5, as to compelling accused to give testimony against himself, be used against such defendant on prosecution for conspiracy to violate such act.

**6. Criminal law ⊜⟶393(1)—Witnesses ⊜⟶206 —Testimony as to conversations, though confidential, heard by wire tapping, not inadmissible.**

Testimony as to conversations between defendants, overheard by witness, though they were confidential conversations, and were overheard by wire tapping, are not inadmissible, either on the ground of confidential relation, or under Const. Amend. 5, as to compelling accused to give testimony against himself.

**7. Criminal law ⊜⟶393(1), 394—Searches and seizures ⊜⟶7—Documents of one defendant, wrongfully seized on search of his premises, admissible against coindictees.**

Documents of a defendant, wrongfully taken on a search of his premises, may, if of evidentiary value, be used against coindictees, the guaranties of Const. Amends. 4, 5, as to unreasonable search and seizure and compelling accused to give testimony against himself, being personal privileges.

Criminal proceeding by the United States against Roy Olmstead and others. On petition to quash search warrant, return property, and suppress evidence. Motions granted in part, and refused in part.

See, also, 5 F.(2d) 712; 7 F.(2d) 756.

The application and affidavit for search warrant states, in substance, that Olmstead, Potter, Elbro, Fletcher, Hubbard and Symonds, "proprietors and their employees," on the 10th day of November, 1924, and thereafter, were possessing and selling intoxicating liquor, all for beverage purposes. A supporting affidavit states that affiant heard "Elsie Olmstead [wife] state that there was intoxicating liquor on said premises; has heard Roy Olmstead state that he had papers and documents relating to the sale and possession of intoxicating liquor on said premises; that affiant knows that said Olmstead and the others mentioned in his application for search warrant are engaged in the sale and traffic of intoxicating liquors; that on recent and numerous prior occasions, and particularly within the last 30 days he has seen persons enter said premises sober and emerge intoxicated, has seen large number of automobiles come to said premises and leave at late hours at night; that he has recognized some of the persons entering and leaving said premises as well-known dealers in intoxicating liquor at Seattle; that he has within the past 30 days heard orders given

and taken at said premises for the sale of intoxicating liquors; * * * that the said premises above are not solely used as a residence but are in part used for a business purpose."

This was sworn to on the 12th day of November, 1924. The affiant states that he is a federal prohibition agent. The commissioner found that there was probable cause and issued a search warrant. The premises were entered on the 17th of November. No liquor was found in the house. A one-fifth gallon flask about two-thirds full was found upon the person of Fletcher on search after arrest, while going from his automobile and as he was about to enter the house. On the 21st of November, 1924, application was made for a search warrant by federal prohibition agents, stating on oath that Finch, Olmstead, Elbro, Fletcher, McInnis, Symonds, and Green, "proprietors and their employees," on the 17th of November, 1924, and thereafter, were possessing and selling intoxicating liquor for beverage purposes.

The supporting affidavit states that on the 12th day of July, 1924, "* * affiant heard Jerry Finch state that he had intoxicating liquor in said premises at 1026 L. C. Smith building, Seattle, Wash., and has heard said Finch make the same statement on one or more times each month in August and September, 1924, and has heard said Finch order intoxicating liquor very recently to be sent to said premises, and has heard said Finch, Olmstead and Fletcher arrange at said premises for the traffic of intoxicating liquor and said parties state that the books and documents relating to the said intoxicating liquor were in said premises, and that some of said conversations were held within less than 30 days last past, and that affiant has heard some of the above parties make arrangements with reputed bootleggers to meet and transact business in said above premises relating to the sale, transportation, and possession of intoxicating liquor."

The defendant Roy Olmstead has moved to quash both search warrants, Finch to quash the search warrant for his office, and both for a return of the property seized and suppress as evidence. Olmstead says the premises searched on November 17th were his private residence, and that the warrant was issued without probable cause; that the search was unlawful; that no intoxicating liquor was found; that upon search certain receipts, a note, bunch of keys, and package of paper and cards were taken away; that said receipts, papers, etc., are now in the possession of the prohibition agents; that the constitutional rights of the defendant under "the Fourth and Fifth Amendments were violated, in that the warrant was issued without probable cause"; that the private dwelling was searched without an unlawful sale of intoxicating liquor being made thereon; that the authority to search in the nighttime was given without proper showing; that the papers were seized without having been described in the application nor authorized by the warrant; and further says that on the 21st of November J. L. Finch was a practicing lawyer in the employ of the defendant, with offices at 1026-27 L. C. Smith building; that he had communicated to his attorney matters of a confidential nature relating to such employment, of which the attorney had memoranda, that he left certain papers, letters, files, and other written memoranda of a confidential nature and of private character with the attorney in such employment, which papers were kept in the office of Finch for safe-keeping; that he had known for some time that the prohibition agents had threatened criminal prosecution, and he had retained and consulted Finch with regard thereto, and the papers were necessary in the preparation of his defense; that Finch had in his office a certain safe containing several safe deposit boxes, one of which has been assigned to Olmstead, and the keys delivered to him; that he had placed many papers, records, and memoranda in this box, and that Finch had placed papers and memoranda in such safe; that the search warrant was issued and the office searched without probable cause; that no intoxicating liquor was found in the office; that upon the search many papers, files, records and written memoranda were carried away, but he is unable to segregate what was taken out of the safe deposit box and safe proper, but that practically all the papers taken by said officers were papers belonging to the petitioner and papers prepared by Finch in behalf of petitioner and pertaining to his affairs; that no return was made on the search warrant, and that the papers and documents were in the possession of the prohibition agents, and that the prohibition agents have made copies of the papers and written memoranda, and have used such papers to obtain clues and leads to other evidence, which other evidence they also purpose to use upon such trial to the prejudice of the petitioner. The petitioner also says that for a long period previous he kept and maintained in his home telephones, installed by public service corporations, and

at various times used the telephones in the customary manner to communicate with others; that a telephone was also installed in the office of his attorney, and that in the month of June the prohibition agents placed or caused to be placed taps, cross-connecting circuits, and other contrivances upon the telephone wires leading to the petitioner's home and also leading to the office of his attorney, and by reason of such contrivances, were enabled to and did hear and listen in to conversations held by petitioner with others over his phone; that many of said conversations so heard were incriminating to this petitioner with reference to the charges made in the indictment herein, and many of such conversations contained information from which leads and clues to other evidence incriminating to petitioner with reference to said charges were obtained; that said prohibition agents caused written memoranda and data to be made of said conversations; and that they intend to use the knowledge gained from such wire tapping upon the trial of the defendant to his prejudice, which is in violation of the Fourth and Fifth Amendments to the Constitution and section 7, art. 1, of the Constitution of the state. He then prays that both warrants be quashed, that all papers, documents, and· property seized be returned, and all evidence obtained by reason of clues or leads, obtained from papers and memoranda received, be suppressed, and that evidence obtained from the wire tapping be suppressed. Finch bases his motion on substantially the same grounds so far as applicable to his office.

Thomas P. Revelle, U. S. Atty., and C. T. McKinney, Asst. U. S. Atty., both of Seattle, Wash.

J. L. Finch, of Seattle, Wash., for defendants.

NETERER, District Judge (after stating the facts as above). [1, 2] A submission to search or arrest will not impair the constitutional right (U. S. v. Slusser [D. C.] 270 F. 819; Youman v. Commonwealth, 189 Ky. 152, 224 S. W. 864, 13 A. L. R. 1303; Amos v. U. S., 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654), and courts will not consider the constitutional rights waived by not contesting by force the assumed right of official conduct, nor can a search unlawful at inception, become lawful by what· has been found (Veeder v. U. S., 252 F. 414, 164 C. C. A. 338; U. S. v. Slusser, supra; Garske v. U. S. [C. C. A.] 1 F.[2d] 620). The Fourth Amendment insures the right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and seizure, and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. The maxim that every man's house is his castle has always been given high value, and no man's house can be forcibly entered and his papers and effects seized without warrant of law, and this procedure is made applicable to letters and sealed packages in the United States mail in Ex Parte Jackson, 96 U. S. 727 at page 733, 24 L. Ed.· 877. "Such matter could only be opened and examined upon warrants issued on oath or affirmation particularly describing the things to be seized." See, also, Weeks v. U. S., 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Boyd v. U. S., 116 U. S. 746, 6 S. Ct. 524, 29 L. Ed. 746. Section 7, art. 1, State Constitution, has no application.

[3, 4] The finding of probable cause is a judicial function. Veeder v. U. S., supra. Section 25, tit. 2, National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½m), expressly authorizes the seizure upon search warrant issued under the provisions of Espionage Act, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼a– 10496¼v), but expressly limits the right to search a dwelling house occupied as such when used for the unlawful sale of intoxicating liquor, or used in part for business, such as a store, shop, saloon, restaurant, hotel, or boarding house. The application and affidavit for search warrant show probable cause of sale of liquor. The grounds were not controverted. Section 10496¼o, Comp St. 1918, Comp. St. Ann. Supp. 1919. See U. S. ex rel. Finch v. Elliott (D. C.) 3 F.(2d) 496, affirmed 5 F.(2d) 292.

The agent "heard orders given and taken for sale of intoxicating liquor from said premises," "heard one of said above occupants state that they had intoxicating liquor on said premises for sale," "heard Elsie Olmstead state there was intoxicating liquor on said premises," "heard Roy Olmstead state that he had papers and documents relating to the sale and possession of intoxicating liquor on said premises," and states "that on recent and numerous prior occasions, and particularly within the last 30 days he has seen persons enter said premises sober and emerge intoxicated, has seen large number of automobiles come to said premises and leave at late hours at night; that he has

recognized some of the persons entering and leaving said premises as well-known dealers in intoxicating liquor in Seattle; that he has within the past 30 days heard orders given and taken at said premises for the sale of intoxicating liquor. * * * *"

These statements appear to come well within the Fourth Amendment and within the holding of the Supreme Court in Hester v. U. S., 265 U. S. 57, 44 S. Ct. 445, 68 L. Ed. 898; Steele v. U. S., 45 S. Ct. 414, 69 L. Ed. 757 (April 13, 1925). See, also, U. S. v. Lepper (D. C.) 288 F. 136.

[5] The serious question before the court is the assertion that the defendants' rights under the Fifth Amendment have been violated in that "no person * * * shall be compelled in any criminal case to be a witness against himself." In neither of the applications for search warrant or the supporting affidavits are any papers, documents, or instruments of any character described. The application must describe with reasonable particularity the thing for which the search is to be made. Search was sought because of a violation of the National Prohibition Act, primarily for intoxicating liquor, a misdemeanor. None being found, the papers and documents were seized and are now sought to be used against the defendants on a felony charge, conspiracy. This may not be done. The Adams Case [1] does not sustain the contention. In that case the search warrant was to find the gambling paraphernalia —policy slips—a felony under the state statute, and the documents and papers submitted were found with the policy slips and had relation to them. In the instant case the papers, etc., seized, were not the means of committing a felony (section 2, tit. 11, Espionage Act [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼b]), or designed in themselves to violate any penal law of the United States. They are merely evidence that a crime may have been committed, and the taking was clearly violative of the Fifth Amendment to the Constitution. The liquor sought was not in the residence of Olmstead, nor was it in the office of Finch; hence the papers could

not be seized under the search warrant upon any theory, not being described therein. It follows that the papers and documents taken from the residence of Olmstead may not be used as evidence against him, and to that extent the Olmstead motion is granted. Whether any of the papers taken from the safe in Finch's office may be used against Olmstead must be determined upon trial. The papers belonging to Finch, taken from his safe, may not be used as evidence against Finch, and to that extent his motion is granted.

[6, 7] Each motion of Olmstead and Finch with relation to telephonic conversation overheard by wire tapping is denied. The confidential relation of attorney and client cannot prevail. Section 1214, Rem. Comp. Stat. Wash. Finch is not testifying to any confidential relation. A third person is not forbidden to relate a confidential conversation heard by him. Wire tapping is not a national offense, nor made so by the statutes of the state of Washington; even so, it would not violate any constitutional right of the defendants to receive the testimony. The conversation is not a property right. If, as stated, the defendants Finch, Olmstead, with others, were conspiring to violate the laws of the United States, they could not seek protection under the confidential relation status. If the conversation referred to had been carried on in the home of the defendant Olmstead, between him and his attorney, and the conversation had been heard by trespassers upon the premises, it would be competent testimony in support of the criminal charge. I know of no rule of law or evidence which would exclude it, and no decision which, even by inference, sustains the contention of the defendant. The constitutional guaranty is a personal privilege. See Hale v. Henkel, 201 U. S. 43, 26 S. Ct. 370, 50 L. Ed. 652; Daniels v. U. S., 294 F. 769; Schwartz v. U. S. (C. C. A.) 294 F. 528; Lusco v. U. S. (C. C. A.) 287 F. 69. There are many other defendants, and, if the documents are of evidentiary value, they may be received as against such other defendants.

The return of the papers and documents is denied.

---

[1] Adams v. New York, 192 U. S. 585, 24 S. Ct. 372, 48 L. Ed. 575.