Opinion
KAY, P. J.—
Statement of Facts
On September 22,1990, San Francisco Police Sergeant John Haggett (Sgt. Haggett) stopped appellant on Gilman Street in San Francisco in response to *Supp. 4 a radio dispatch regarding a shooting in the Double Rock Projects. The person injured in the shooting identified appellant as the woman who had shot at him.
Sgt. Haggett advised appellant of her Miranda rights (Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]), and appellant waived her rights. After initially giving a false name and address, appellant told Sgt. Haggett her correct address. Appellant denied involvement in the shooting but initiated a conversation about having found a gun and expressed concern that the gun might be stolen. Sgt. Haggett requested permission to search appellant’s residence for a gun. Appellant said, “yes.”
Sgt. Haggett then went to appellant’s residence, knocked, and a woman who identified herself as appellant’s daughter answered the door. She informed Sgt. Haggett that she and her mother lived there together. After Sgt. Haggett explained the situation to her, appellant’s daughter invited him into the house and told him that her mother kept the gun in a closet on the main landing. The closet had a padlock on it. Sgt. Haggett asked her for the key. The daughter searched the common living areas for the key, but could not find it.
Sgt. Haggett then called the Potrero Hill station and told Officer Versosa to ask appellant for the key to the closet. Officer Versosa arrived at appellant’s residence with a key which opened the padlocked closet. A .32-caliber revolver was in plain sight on the shelf of the closet.
Sgt. Haggett was the only prosecution witness at the hearing on the motion to suppress. Since Sgt. Haggett did not himself obtain the key from appellant, he could testify only that he believed that Officer Versosa obtained appellant’s permission to take the key to the padlock from her.
The trial court found two situations to which the issue of consent was material: 1) consent to search the house; and 2) consent to search the closet. The trial court held that the evidence supported a finding that appellant consented to the search of the premises. It also found that respondent offered sufficient evidence to prove that when appellant turned the key over to Officer Versosa she consented to giving up the key to the padlock, thus shifting the burden to appellant to rebut the evidence that she voluntarily relinquished the key and thereby consented to the search of the closet.
Discussion
I. The Search of the House
The United States Constitution and the California Constitution protect persons from unreasonable searches and seizures by the government. *Supp. 5 (U.S. Const., 4th Amend.; Cal. Const, art. I, § 13.) When the police have executed a warrantless search, the prosecution bears the burden of justifying the reasonableness of the search. (Badillo v. Superior Court (1956) 46 Cal.2d 269 [294 P.2d 23].) A warrantless search may be justified by showing that the individual whose premises or effects were searched, voluntarily consented to the search. (Schneckloth v. Bustamonte (1973) 412 U.S. 218, 219 [36 L.Ed.2d 854, 858, 93 S.Ct. 2041]; People v. Michael (1955) 45 Cal.2d 751, 753 [290 P.2d 852].)
The evidence clearly supports the trial court’s finding that appellant consented to the search of her house. The trial court, however, failed to consider whether the scope of appellant’s initial consent included consent to search the locked closet. If this were the case, it would be irrelevant whether or not appellant voluntarily relinquished the key to Officer Versosa.
“The standard for measuring . . . consent under the Fourth Amendment is that of ‘objective’ reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?” (Florida v. Jimeno (1991) 500 U.S. _ [114 L.Ed.2d 297, 302, 111 S.Ct. 1801] (Jimeno).) In Jimeno, the United States Supreme Court upheld the constitutionality of a search of a paper bag located in the passenger compartment of a car based upon the appellant’s consent to the search of the car. The court found that appellant’s consent to the search of his car without any express limitations included consent to search a paper bag lying on the floor of the car. (Ibid.) In California, the Court of Appeal reached a similar decision holding that an appellant’s consent to the search of the trunk of his car permitted police to search paper bags and envelopes located within the trunk. (People v. Williams (1980) 114 Cal.App.3d 67, 73 [170 Cal.Rptr. 433].)
The present case, however, distinguishes itself from both Jimeno and Williams. Although appellant did not place any limitations on the scope of the search and told Sgt. Haggett that he could search her house, she gave permission knowing that the living room closet was locked and that the key was in her possession. Indeed, she was identified as the shooter and the only logical interpretation of the facts is that only moments before she had locked the gun in the closet herself. On these facts, it would be unreasonable to conclude that appellant’s consent to the search of her home, given while the key to the locked closet was in her pocket, included consent to search the locked closet. The Supreme Court noted a similar distinction in Jimeno: “It is very likely unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk, but it is otherwise with respect to a closed paper bag.” (Jimeno, supra, *Supp. 6 500 U.S. at p__[114 L.Ed.2d at p. 303].) Here, appellant consented to the search of her home knowing that she had locked the closet.
Thus, having determined that appellant’s original consent to the search of her house did not include consent to search the locked closet, we must now determine whether any other justification supports the warrantless search of the closet.
II. The Search of the Closet
A. The Daughter’s Consent
One who possesses common authority over premises or effects may give valid consent as against an absent nonconsenting person with whom that authority is shared. (United States v. Matlock (1974) 415 U.S. 164, 170 [39 L.Ed.2d 242, 249, 94 S.Ct. 988].) Reasonably apparent authority to consent to a search by a third party who possesses common authority over the premises or effects to be searched is sufficient to justify a warrantless search even though the police rely upon it mistakenly. (Illinois v. Rodriguez (1990) 497 U.S. 177, _ [111 L.Ed.2d 148, 161, 110 S.Ct. 2793].)
Although appellant’s daughter also consented to the search of the house which she shared with her mother, it would be unreasonable to assume that she had apparent authority to consent to search the locked closet since she did not have a key to the padlock. When the courts have upheld the constitutionality of warrantless searches based upon a third party’s consent to the search, the person identified as having apparent authority provided the state authorities access to the area to be searched. (See, e.g., Illinois v. Rodriguez, supra, 497 U.S. 177 [111 L.Ed.2d 148].) We cannot find that appellant’s daughter possessed common authority over the closet with her mother since she did not have joint access to the closet.
B. Appellant’s Consent
Respondent had the burden of proving by a preponderance of the evidence that appellant consented to the search of the closet. (United States v. Matlock, supra, 415 U.S. 164, 177, fn. 14 [39 L.Ed.2d 242, 253].) Sgt. Haggett was the sole witness for the prosecution at the hearing. Although he told Officer Versosa to ask appellant for the key, he himself did not obtain the key from her. The trial court found that Sgt. Haggett’s testimony that he told Officer Versosa to ask for the key and Officer Versosa’s appearance at the house with the key was sufficient to shift the burden to appellant to prove that she did not turn the key over to Officer Versosa voluntarily.
*Supp. 7 We disagree and find that respondent failed to meet its burden of proof regarding the voluntariness of appellant’s relinquishment of the key. No evidence supports a finding that appellant voluntarily gave Officer Versosa the key. The mere fact that the officer appeared at the house with the key tells nothing about how the key was obtained. Respondent failed to prove that the police obtained appellant’s consent to search the closet.
Thus, having determined that the warrantless search of the locked closet was not justified by consent, the trial court’s order denying appellant’s motion to suppress in municipal court No. 1260812 is reversed.
Garcia, J., concurred.