[No. B167293. Second Dist., Div. Six. May 27, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT JOSEPH COLT, Defendant and Appellant.

**COUNSEL**

Larry S. Dushkes, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Marc E. Turchin and Linda C. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**YEGAN, Acting, P. J.—** ◼ Paraphrasing our California Supreme Court, we hold that a police officer may seek an interview with a suspect at his home as long as such inquiry is courteously made and not accompanied by any assertion of a right to enter or secure answers. Federal jurisprudence

describes this police tactic as "knock and talk." In this situation, the encounter between the police and the person is consensual and Fourth Amendment protections are not implicated.

Robert Joseph Colt appeals from the judgment entered following his no contest plea to possessing methamphetamine for sale. (Health & Saf. Code, § 11378.) Probation was granted with a condition that he serve 240 days in the county jail. Appellant contends that the trial court erred in denying his motion to suppress evidence. (Pen. Code, § 1538.5.) We disagree and affirm.

### Facts

We view the evidence in the light most favorable to the order denying suppression, which is required by the familiar rule of appellate review. (E.g., *People v. Weaver* (2001) 26 Cal.4th 876, 924 [111 Cal.Rptr.2d 2, 29 P.3d 103].) On the evening of September 18, 2002, narcotics task force agents advised Atascadero Police Sergeant Joseph Allen that appellant was suspected of selling methamphetamine in room 8 at the San Palo Inn. The agents told him "to keep an eye out for a vehicle with a license plate that said 'KID COLT.' If that vehicle was there, that meant he was probably there."

Sergeant Allen knew appellant. He had previously visited with appellant when appellant worked at an all-night gas station. He also knew that appellant had a criminal record. He drove past the San Palo Inn eight times that evening. At approximately 2:30 a.m., he saw a car with "KID COLT" license plates parked next to room 8. The light in room 8 was on and someone appeared to be inside.

After Sergeant Allen and three fellow officers began surveillance, a woman drove up to room 8 and attempted to go inside. The police told her to leave. Sergeant Allen was concerned that the woman would telephone room 8 and warn the occupants. To maintain the integrity of the investigation, Sergeant Allen walked up to room 8 and knocked on the door. For purposes of officer safety, he moved to the left of the door. Two other officers stood to the right of the door so they could not be seen.

Appellant opened the door and quickly walked outside about 20 feet, looking left to right. Sergeant Allen, concerned for officer safety, saw that appellant did not have weapons in his hands. He then approached appellant and talked with him for about two minutes. Appellant was nervous, had dilated pupils, spoke rapidly, and constantly jerked his head side to side.

Sergeant Allen determined that appellant "definitely was exhibiting symptoms . . . consistent with being under the influence of a central nervous

system stimulant." Appellant was arrested and had 21.8 grams of methamphetamine, a glass pipe, and $156 in his pocket. The police obtained a search warrant and found cell phones, a digital scale, packaging materials, psilocybin mushrooms, and a .38-caliber semi-automatic handgun in the motel room.

### Suppression Motion and Ruling

Appellant moved to suppress the evidence. Citing *People v. Reyes* (2000) 83 Cal.App.4th 7 [98 Cal.Rptr.2d 898], he argued that knocking on the door and hiding to lure him outside was an unlawful police tactic. The trial court found that "this is not an illegal ruse for the simple reason that one of the expected outcomes would have been for the individual to open the door and not exit. The testimony I have before me is—and the only uncontradicted testimony—is that Mr. Colt exited the room voluntarily. Now, it may have been within the range of expected outcomes, but he was not compelled to do so. And so I don't find that it's an illegal ruse."

### The Alleged Ruse

Appellant argues that the act of knocking on a door and stepping out of view to lure a suspect outside of his dwelling violates the Fourth Amendment. The older cases involve police ruses to gain visual entry into a residence. For example, in *People v. Reeves* (1964) 61 Cal.2d 268 [38 Cal.Rptr. 1, 391 P.2d 393], the police suspected defendant was selling narcotics at a hotel. The officers had the hotel manager phone defendant and say that a registered letter was at the front desk. When defendant opened his door, the police peeked inside and saw a marijuana cigarette. Our Supreme Court held that this was an unlawful visual entry. (*Id.*, at p. 273.) "It is well settled by both federal and state decisions that 'an entry obtained by trickery, stealth or subterfuge renders a search and seizure invalid' [citations]." (*Ibid.*)

In *People v. Reyes, supra*, 83 Cal.App.4th 7, the police went to a parolee's apartment to conduct a narcotics investigation. They planned to search anyone whom they could lure outside. An undercover officer dressed in jeans and a T-shirt peered through the front screen door and said that he hit defendant's truck in the alley. When defendant walked outside to check for auto damage, he was accosted by a team of narcotics officers in raid gear. "Defendant was ordered to put his hands behind his back. One officer pinned his thumbs and searched his pockets. Another asked Reyes for his consent to a search of his person for weapons. Reyes responded, 'What difference does it make, you've already done it.' " (*Id.*, at p. 9.) The police found methamphetamine in his shirt pocket.

The Court of Appeal ruled that Reyes was unlawfully detained. (*People v. Reyes, supra*, 83 Cal.App.4th at p. 13.) The court held that "[a] deception

used to gain entry into a home and a ruse that lures a suspect out of a residence is a distinction without much difference. . . . [I]n those instances where the identity of the officers is not known to the responding party, we think the dispositive issue ought to be the nature of the ruse employed." (*Id.*, at pp. 12–13.)

■ We exercise restraint and do not express an opinion on the holding of *Reyes*. It is sufficient to observe that *Reyes* is factually distinguishable from the instant case. Unlike *Reyes,* here there was no misrepresentation or false statement by an officer posing as a civilian. There was no statement at all. There was no ruse at all. Sergeant Allen simply knocked on the door and stepped out of sight for officer safety. It was not unreasonable for the officers to take precautionary self-defense measures, i.e., concealing themselves, when seeking an interview with a suspected methamphetamine seller. "The lives and safety of police officers weigh heavily in the balance of competing Fourth Amendment considerations. [Citations]." (*People v. Dickey* (1994) 21 Cal.App.4th 952, 957 [27 Cal.Rptr.2d 44].) The officers' precautionary self-defense measures do not show that they did not "courteously" seek the inquiry.

In *Mann v. Superior Court* (1970) 3 Cal.3d 1 [88 Cal.Rptr. 380, 472 P.2d 468], the police investigated a report of marijuana use at a residence. They knocked on the front door. Two occupants, who did not come to the closed front door, said "Come in." (*Id.*, at p. 5.) The officers did so and detected the odor of marijuana. The defendants claimed that their consent to enter was obtained by subterfuge and fraud. The Supreme Court rejected this claim because "there was no . . . form of active deception." (*Id.*, at p. 9.) That is the case here. Sergeant Allen did not engage in active deception by simply knocking on a door.

Even if a simple knock on a door and concealing one's self can be equated with a ruse or "active deception," this police tactic does not implicate Fourth Amendment protections. In *People v. Rand* (1972) 23 Cal.App.3d 579 [100 Cal.Rptr. 473], officers telephoned a drug dealer and said " 'the police are coming; get rid of the stuff.' " (*Id.*, at p. 582.) The defendant was detained leaving the premises with narcotics. The Court of Appeal held: "Where the ruse does no more than to cause a defendant, activated by his own decision, to do an incriminating act—whether that act be a sale to an undercover agent or a jettisoning of incriminating material—no illegality exists." (*Id.*, at p. 583; see also *People v. Martino* (1985) 166 Cal.App.3d 777, 789 [212 Cal.Rptr. 45] [phone call to cocaine dealer].)

So too here. The challenged police tactic caused appellant, motivated by his own curiosity, to exit the motel room while intoxicated on drugs.

■ A simple door knock, standing alone, does not violate the Fourth Amendment. Sergeant Allen did what any person could lawfully do, i.e., he knocked on a motel room door. The police are permitted to walk on a public pathway to a motel room door and to knock on the door. (See *People v. Camacho* (2000) 23 Cal.4th 824, 831–833 [98 Cal.Rptr.2d 232, 3 P.3d 878].) That appellant did not realize that the police were outside does not vitiate his decision to exit the motel room. Paraphrasing our Supreme Court, for all appellant knew or apparently cared, he may have voluntarily exited to greet an unwelcome acquaintance, an irate neighbor, or a thief. Appellant cannot now complain that he did not know that the callers were the police. (*Mann v. Superior Court, supra,* 3 Cal.3d at p. 8.) Appellant could have disregarded the knock or asked who was there before opening the door and coming out of his room.

■ At oral argument, appellant asserted that the officers should have identified *themselves so that appellant could make an informed decision to* leave or stay inside. There are at least two flaws to this notice theory. First, Sergeant Allen was going to have a discussion with appellant if he had to wait all night for appellant to exit the motel room. He had attempted to contact appellant eight times that night before knocking on the door. An officer can lawfully wait for a suspect to exit a motel room. The officer does not lose the right to seek an interview by knocking on the door. Second, in an analogous context, our Supreme Court has held that a person need not be advised of the right to refuse to give consent to a search as a precondition to a valid consent. (*People v. James* (1977) 19 Cal.3d 99, 114–115 [137 Cal.Rptr. 447, 561 P.2d 1135].) This rationale is here applicable and dictates that the police are not required to identify themselves as a precondition to a finding that a person voluntarily leaves his abode.

### "Knock and Talk"

" '[T]here is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's "castle" with the honest intent of asking questions of the occupant thereof whether the questioner be a pollster, a salesman, or an officer of the law.' " (*United States v. Cormier* (9th Cir. 2000) 220 F.3d 1103, 1109; Joseph, Warrantless Search Law Deskbook (2003) § 7:3, p. 103.) Federal jurisprudence describes this police tactic as "knock and talk." (*United States v. Cormier, supra,* 220 F.3d at p. 1109; see also *Davis v. United States* (9th Cir. 1964) 327 F.2d 301, 303.) Our own California Supreme Court has similarly said: "[I]t is not unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes. Such inquiries, although courteously made and not accompanied with any

assertion of a right to enter or search or secure answers, would permit the criminal to defeat his prosecution by voluntarily revealing all of the evidence against him and then contending that he acted only in response to an implied assertion of unlawful authority." (*People v. Michael* (1955) 45 Cal.2d 751, 754 [290 P.2d 852].)

Sergeant Allen could lawfully knock on appellant's motel door to seek an interview. He did not lose this right by momentarily concealing himself to first determine if appellant would peacefully answer the knock on the door.

## Consensual Encounter

Appellant's contention that he was unlawfully detained when he spoke with Sergeant Allen is without merit. As indicated, absent a police demand to open the door and come outside, Fourth Amendment protections are not implicated. (E.g., *U.S. v. Cormier, supra,* 220 F.3d at p. 1109.) It is uncontroverted that appellant walked outside and talked to Sergeant Allen about personal matters. Sergeant Allen testified that he greeted appellant and asked "how are you doing, because I knew of his past. And I hadn't seen him in a long time, and I was telling him that that's good, you know, you must be doing really good, because he had some negative contacts with law enforcement." The officers did not draw their weapons. Appellant was not surrounded. No one stood between appellant and the room door. No one said that appellant was not free to leave.

"The United States Supreme Court has made it clear that a detention does not occur when a police officer merely approaches an individual on the street and asks a few questions. [Citation.] As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required on the part of the officer. Only when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty, does a seizure occur. [Citations.]" (*In re Manuel G.* (1997) 16 Cal.4th 805, 821 [66 Cal.Rptr.2d 701, 941 P.2d 880].) The reasonable person test is objective and presupposes an *innocent* person. (*Florida v. Bostick* (1991) 501 U.S. 429, 438 [115 L.Ed.2d 389, 400, 111 S.Ct. 2382].)

The trial court found there was no detention, that the encounter was consensual and that appellant "was not under duress or being coerced to stay there . . . . Sergeant Allen's testimony was that when he approached and talked to him, that he noticed certain signs [of intoxication] which were then communicated to Officer Bowling and led to a subsequent arrest."

## Conclusion

■ Based on the totality of the circumstances, the trial court reasonably concluded that there was no Fourth Amendment violation. Appellant's decision to open the door, walk outside, and talk to Sergeant Allen while intoxicated, was voluntary. In determining whether it was a consensual encounter, we are "not called upon to evaluate the [d]efendant's common sense." (*United States v. Ludrow* (10th Cir 1994) 19 F.3d 1332, 1337.) With the benefit of hindsight and from appellant's perspective, he made a foolish but voluntary decision to come outside and speak with Sergeant Allen. In this situation, appellant is not permitted ". . . to defeat his prosecution by voluntarily revealing . . . evidence against him and then contending that he acted only in response to an implied assertion of unlawful authority." (*People v. Michael, supra,* 45 Cal.2d at p. 754.)

The judgment (order denying motion to suppress evidence) is affirmed.

Coffee, J., and Perren, J., concurred.

· A petition for a rehearing was denied June 22, 2004, and appellant's petition for review by the Supreme Court was denied August 11, 2004.